## OUTLOOK ENVELOPE CO. v. SHERMAN ENVELOPE CO.

(District Court, D. Massachusetts. January 19, 1914.)

No. 295.

PATENTS (§ 328*)—INVENTION—ENVELOPE.

The Callahan patent No. 701,839 for an envelope having a display opening in its face with a transparent covering in combination, with a communication sheet therein so folded as to show the name and address of the sendee through the display opening, *held* void for lack of invention in view of the state of the art.

In Equity. Suit by the Outlook Envelope Company against the Sherman Envelope Company. On final hearing. Decree for defendant.

Louis W. Southgate, of Worcester, Mass., for complainant.
Coale & Hayes, of Boston, Mass., for defendant.

DODGE, Circuit Judge. This is a suit for infringement of United States patent No. 701,839, June 10, 1902, to Americus F. Callahan, for an improvement in envelopes. There is only one claim; the only disputed issue is as to its patentability. The claim is as follows:

"In combination with an envelope having a comparatively opaque face and a display-opening therein having transparent covering, of a folded communication sheet therein, said sheet being so folded with regard to the position of the sendee's name and address upon the same side of the sheet with the communication, that only said name and address appear through the display-opening whereby the sendee's name and address as a part of the communication serves also as the envelope address."

"Open slot" envelopes, i. e., envelopes having an uncovered display-opening in a comparatively opaque face, were used before the date of this patent in combination with communication sheets so folded, with

regard to the sendee's name and address upon the same side of the sheet with the communication, that only said name and address appeared through the display-opening. In them, when so used, the sendee's name and address as a part of the communication served also as the envelope's address. Such a combination is not covered by any patent, so far as appears. The defendant has made open-slot envelopes capable of such use since 1899, and has used them itself since that date in combination with correspondence sheets as above described. In 1900 and 1901 it sold such envelopes to customers in not inconsiderable quantities. Such envelopes had been made by others before the defendant began to make them in 1899.

The patentee was not the first to contrive a slotted envelope with a transparent cover for the slot. United States patent to J. S. Brown, No. 36,393, September 9, 1862, describes such an envelope and such a cover for its slot. This patent, however, although under it the transparently covered opening may be wherever convenient within the face of the envelope, or may be coextensive with the face of the envelope, says nothing about so locating the opening as to correspond with the location, on a folded communication sheet to be inclosed, of the sendee's name and address. These were to be on a "card of address," to be placed in the envelope along with the inclosure to be transmitted, in such manner as to show them through the transparent cover of the opening; and, of course, the patent in no way contemplates making the address on a communication sheet serve also to address the envelope. This patent has, of course, long since expired, and little or no use appears to have been made of the patented device.

Envelopes to contain merchandise of various kinds with transparently covered slots, through which the contents could be examined without opening the envelope, were also patented in the United States by Kinner (No. 101,275, March 29, 1870) and in England by Ziegenspeck, No. 23,927 (1896), and Boldt, No. 29,956 (1897).

A British patent to Janett & Scholz, No. 4562 (1900) is for an envelope having one side made of transparent material so that the inscription on the letter inserted therein is legible from the outside.

All that has been accomplished by the patent in suit is to provide a transparent cover for the open-slot envelope when used in combination with a communication sheet addressed and folded as above. By this addition of a transparent cover certain obvious disadvantages of the open-slot are avoided. Without it, matter other than the address, if upon the same side of the same fold of the communication sheet, might be read through the open slot. The entire communication sheet might even be removed and replaced through the slot without leaving indications upon the envelope that this had been done. The open slot is liable to catch and tear the envelope. The use of envelopes having the slot transparently covered has, since the plaintiff began their manufacture, become far more general than the use of "open-slot" envelopes without the cover, in combination, as above, with a communication sheet such as described. Since the plaintiff acquired the patent in suit in 1903, it has had great commercial success

in making and selling envelopes of the kind described, which success is, without doubt, largely due to their superiority in the above respects to the open-slot envelope.

But notwithstanding the presumption from the grant of the patent, and notwithstanding the fact that the plaintiff's envelopes have the commercial merit referred to, I am unable to believe that the patentee's addition of the transparent cover to the open slot formerly used amounted to invention, in view of the state of the art at the time. Everything else in his combination was old, and the transparent cover which he added was old except in its relation to the communication sheet folded so as to show the address through the slot without a cover, which was one of the old elements of the combination. To arrange an envelope of the kind described in the Brown patent in such a way that the position of its transparently covered slot should correspond with the position of the name and address on a communication sheet within, so addressed and folded as to show them where the slot would display them if uncovered, was not to make the old elements combined produce any new mode of operation. The patentee could claim no invention so far as his communication sheet is concerned, nor any with regard to the function of at once protecting it and displaying the desired part of it which his envelope performs.

The case does not seem to me one in which the patentee can fairly be said to have taken, in securing a long-sought result, such a "final step" as has been held to constitute invention. If he can properly be said to have made any new use of the transparent covering for the slot, it would be too nearly analogous to the use made of such a covering in the former devices. The proper position, within the face of the envelope, for the slot had been already selected, and adopting the same position for the covered slot seems to me to have required nothing more than mechanical skill.

It may be added that the evidence by no means proves the commercial success of the plaintiff's envelopes to have been secured entirely by inherent superiority to all former devices. To it the plaintiff's commercial skill in pushing their sale and in educating the public to their use appear to have largely contributed.

A decree may be entered dismissing the bill, with costs.